811 F.2d 608
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles J. BURKHART, Defendant-Appellee.
 No. 86-3224.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1986.
 
 Before WELLFORD and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals from a bench trial conviction on a two-count indictment charging use of the mails to transmit child pornography.[1] The principal defense offered at trial was entrapment which was rejected by the trial judge. On appeal, Burkhart argues that he was entrapped as a matter of law and that the government did not prove beyond a reasonable doubt that Burkhart was predisposed to commit the offense for which he was convicted. For the reasons that follow, we affirm.
 
 I.
 
 2
 This case has its genesis in an extensive child pornography sting operation initiated by postal inspectors.[2] The general scheme which was followed here was to secure names of likely targets from some source which would indicate that the target has an interest in child pornography.[3]
 
 
 3
 The target would be sent a letter couched in the suggestive yet not explicit style used by persons dealing in pornographic materials. Here, for example, the letter inquired of Burkhart if he was one who believed "in the joys of sex and the complete awareness of those lusty and youthful lads and lasses of the neophyte age." If the target did not respond to the first letter (as was the case here), a second was sent. This second letter contained a five page questionnaire dealing with a broad range of sexual subjects and preferences. The questionnaire is cleverly designed to not only elicit information as to pedophilic tendencies, if any, but also to determine if in acquiring sexually explicit materials in the past the use of the mails was involved. Burkhart's response indicated his highest sexual preference was for pre-teen heterosexual sex, and that he would be willing to purchase sexual materials from a mail order outlet. Once a target responds in this fashion, he is then encouraged to correspond with others of similar interests, all of whom in this case, of course, were Postal Inspector Paul Hartman, using a variety of fictitious identities. Burkhart struck up a correspondence with "Ted Ricci" (Hartman) which culminated in Ricci mailing Burkhart some non "sexually explicit"[4] photos of a minor female and Burkhart on two separate occasions mailing back "sexually explicit" photos of a minor female. These two mailings constituted the acts which were the bases for the two-count indictment against defendant.
 
 
 4
 After receiving the second photo, Inspector Hartman secured and executed a search warrant for defendant's residence. Seized in the search were a number of items of evidentiary significance later used in defendant's trial, including numerous photos of minors engaged in sexually explicit conduct. Both the correspondence between defendant and "Ricci" and the materials seized at defendant's residence left no doubt that defendant was not only interested in child pornography but also interested in actual sexual encounters with pre-teen subjects.
 
 II.
 
 5
 Defendant's entrapment arguments and his claim of no predisposition misperceives the law of entrapment. Defendant is really making a kind of "but for" argument. Defendant argues that he would not have sent the photos through the mails but for the initiation of correspondence by government agents. Although this may be factually correct, it does not provide a defense under the circumstances presented here.
 
 
 6
 All entrapment inquiries are two pronged: the conduct of the government and the conduct, including predisposition, of the defendant. Insofar as the conduct of the government here is concerned, we conclude that it was an appropriate exercise of the investigatory powers and responsibilities of the postal inspectors. It is quite similar to the investigative technique that was employed by postal inspectors in United States v. Thoma, 726 F.2d 1191 (7th Cir.), cert. denied, 467 U.S. 1228 (1984). Although the response of the defendant in Thoma was more direct and affirmative than here, it is clear that the scheme of the postal inspectors received the Seventh Circuit's seal of approval. Also this court very recently, in the unpublished case of United States v. Davis, No. 85-3854 (6th Cir. Oct. 16, 1986) (per curiam), has found that this very technique by the same postal inspector involved here passes muster.
 
 
 7
 Since we find no overreaching in the basic ploy used by the government, we now examine the conduct and "predisposition" of the defendant. Defendant relies heavily on our decision in United States v. McLernon, 746 F.2d 1098 (6th Cir.1984). In McLernon this court, in discussing predisposition, quoted with approval from United States v. Kaminski, 703 F.2d 1004 (7th Cir.1983), to the effect that the factors relevant to determining predisposition include:
 
 
 8
 the character or reputation of the defendant, including any prior criminal record; whether the suggestion of the criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement or persuasion supplied by the Government.
 
 
 9
 Kaminski, 703 F.2d at 1008 (quoting Reynoso-Ulloa, 548 at 1336); See also United States v. Townsend, 555 F.2d 152, 155 n. 3 (7th Cir.), cert. denied, 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 184 (1977).
 
 
 10
 McLernon, 746 F.2d at 1112.
 
 
 11
 The above listing was never intended to be either exclusive or all inclusive. It represents a distillation of factors taken from other circuit and Supreme Court decisions. There is no suggestion that all factors are always relevant to each case. McLernon does indicate, however, that of the factors listed, the most important one concerns whether the defendant evidenced reluctance to engage in criminal activity which was overborne by repeated government inducements. 746 F.2d at 1113. We reject defendant's arguments that such was the case here. Defendant makes far too much of the fact that contact was initiated by the government. This is true is all of the sting type operation which are so common today.[5]
 
 
 12
 The facts have indicated that the defendant demonstrated no reluctance whatsoever to mail the photos. The fact that he did not respond to every letter sent by the government merely illustrates, as defendant himself said in one of his letters, "I'm not very good at letter writing." (App. 118.) Defendant's letters, by their constant references to his being ready and able to travel at any time and calling him collect, make it clear that defendant was more interested in actual sexual contact than photos, but this hardly demonstrates reluctance on his part.
 
 
 13
 It is clear beyond dispute from defendant's letters and the materials seized from his residence that he was interested in and a collector of child pornography and that he was interested in obtaining and exchanging child pornography. He may never have sent any through the mails before this, but this is not the test. When provided the opportunity to do so, he jumped at the chance. Perhaps from his perspective he was "trapped," but, as the Supreme Court stated in Sherman v. United States, 356 U.S. 369, 372 (1958), "a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."[6]
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Specifically, defendant was charged with violating 18 U.S.C. Sec. 2252 which reads in pertinent part:
 (a) Any person who--
 (1) knowingly transports or ships in interstate or foreign commerce or mails any visual depiction, if--
 (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct;....
 
 
 [2]
 This same sting operation has generated other convictions and appeals. See, e.g., United States v. Davis, No. 85-3854 (6th Cir. Oct. 16, 1986) (per curiam)
 
 
 [3]
 Here, Burkhart's name was found on a mailing list seized in 1980 in Los Angeles, California, from a suspected trafficker of child pornography
 
 
 [4]
 Title 18, U.S.C. Sec. 2255, defines "sexually explicit conduct" as follows:
 For the purposes of this chapter, the term--....
 (2) "sexually explicit conduct" means actual or simulated--
 (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
 (B) bestiality;
 (C) masturbation;
 (D) sadistic or masochistic abuse; or
 (E) lascivious exhibition of the genitals or pubic area of any person; ....
 
 
 [5]
 Since this was a bench trial, defendant's argument that he was entrapped "as a matter of law" has little real significance since there was no question of letting other than the judge resolve this issue. Here, it is really just a method of arguing egregious circumstances clearly demonstrating entrapment
 
 
 [6]
 See, e.g., the ABSCAM cases such as: United States v. Kelly, 707 F.2d 1460 (D.C.Cir.), cert. denied, 464 U.S. 908 (1983); United States v. Williams, 705 F.2d 603 (2d Cir.), cert. denied, 464 U.S. 855 (1983); United States v. Meyers, 692 F.2d 823 (2d Cir.), cert. denied, 461 U.S. 961 (1982); United States v. Carpentier, 689 F.2d 21 (2d Cir.), cert. denied, 459 U.S. 1108 (1983); United States v. Alexandro, 675 F.2d 34 (2d Cir.), cert. denied, 459 U.S. 834 (1982); and United States v. Jannotti, 673 F.2d 578 (3rd Cir.), cert. denied, 457 U.S. 1106 (1982)